IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**EVERGREEN APARTMENTS, LLC,** **PLAINTIFFS**
a Illinois limited liability company;
**EVERGREEN APARTMENTS, LLC,**
a Delaware limited liability company; and
**FOUNTAINBLEAU MANAGEMENT** NO. 1:13-CV-00157-DMB-DAS
**SERVICES, LLC,** a Louisiana limited
liability company

V.

**CITY OF TUPELO, and TUPELO POTW** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a diversity action brought by past and current property owners and their management company against the City of Tupelo and Tupelo POTW for an alleged failure to exercise due care in the construction, operation, and maintenance of the City's sanitary sewer system. Before the Court is the defendants' motion to dismiss, or in the alternative, for summary judgment.[1] Doc. #30.

**I.
Proper Standard**

In their motion, Defendants seek dismissal of all of Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure, or summary judgment on all claims pursuant to Rule 56. In support of their motion, Defendants attached numerous materials outside the pleadings. *See* Doc. #30. Similarly, in their response opposing the motion, Plaintiffs attached various non-pleading exhibits. *See* Doc. #41.

---

[1] This matter has been more than fully briefed, including the submission of a sur-reply. The issues addressed in the sur-reply are irrelevant to this Court's decision.

Where "both parties have submitted – and the Court has not excluded – materials outside of the pleadings, Rule 12(b) directs the Court to treat the motion as one for summary judgment and to dispose of it under Rule 56." *Bowers v. Nicholson*, No. H-07-1910, 2007 WL 3047223, at *4 (S.D. Tex. Oct. 18, 2007) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1283–84 (5th Cir. 1990)). Here, because both parties have submitted evidence outside the pleadings, which the Court has not excluded, Defendants' motion will be treated as a motion for summary judgment. *Id.*; *see also Sweet v. Lucine*, No. C 01-3577, 2002 WL 31855365, at *2 n.3 (N.D. Cal. Dec. 16, 2002) ("Defendants moved to dismiss or in the alternative for summary judgment but did not distinguish between pleading problems and proof problems. Because the parties focused their efforts on the evidence … the court does not reach the motion to dismiss.").

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transport A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 22–23 (1986)). To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Id.* at 411–12 (internal quotation marks omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

Where "the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World*

*Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II.
## Relevant Facts

The President's Gate Apartments, formerly known as the Evergreen Square Apartments ("Evergreen Square"), are owned by Plaintiff Evergreen Apartments, LLC, a Delaware limited liability company ("Evergreen Delaware"). Doc. #41-1 at ¶ 3; Doc. #41-6. Evergreen Delaware was formed as a part of the dissolution of Plaintiff Evergreen Apartments, L.L.C., an Illinois limited liability company ("Evergreen Illinois"). Doc. #54-1 at ¶¶ 3–4. Plaintiff Fountainbleau Management Services, LLC ("FMS"), is the former manager of Evergreen Illinois and the current manager of Evergreen Delaware. Doc. #41-1 at ¶¶ 3–4.

Beginning on April 11, 2008, the Department of Development Services for the City of Tupelo received reports regarding "major sewage problems" at Evergreen Square, "including raw sewage backing up into some of the apartments." Doc. #30-1 at ¶ 5. Between April 11, 2008, and October 5, 2008, certain unnamed "officers, employees and representatives of Evergreen Square and Fountainbleau Management Services," contacted Lynda Ford, Inspector at the Department of Development Services. *Id.* at ¶¶ 3, 7. According to Ford, the anonymous

representatives "asserted … that … the sewage problems were caused by … inadequate sewer lines and the inadequate design of the City of Tupelo's sewer system and were not caused by the sewer lines at Evergreen Square Apartments." *Id*. at ¶ 7. In contrast to Ford's recollection, Roland T.A. Von Kurnatowski, Jr., the managing member of FMS, claims that he "did not have any conversations with Linda Ford between April 11, 2008 and October 5, 2008 in which I asserted that the sewage problems being experienced at the Evergreen Square property were caused by inadequate sewer lines and/or the inadequate design of the City of Tupelo's sewer."[2]

Following an investigation in which the City of Tupelo ("City") found no obstruction in its sewer lines, Evergreen Square was "required by the City of Tupelo to repair and/or replace their sewer lines." *Id.* at ¶¶ 8–9.

On November 3, 2008, individual tenants at Evergreen Square filed a civil action in this Court against Plaintiff FMS and certain individual defendants. Doc. #30-2; *see also Adkins v. Fountainbleau Mgmt. Servs., LLC*, No. 1:08-cv-00257 (N.D. Miss. 2008). In their complaint, the tenants alleged, among other things, that FMS, the manager of Evergreen Square, was "informed … that the repeated sewer backups were due to aging, blocked lines and could not be stopped without replacing the main sewer service lines connecting Evergreen Square's buildings to the city sewer system." Doc. #30-2 at ¶ 11.

---

[2] Von Kurnatowski's affidavit also claims that he "conferred with all authorized representatives of Evergreen [Delaware], Evergreen [Illinois], and [FMS] and confirmed that none of these individuals had any conversations with Lynda Ford between April 11, 2008 and October 5, 2008 in which they asserted that the sewage problems being experienced at the Evergreen Square property were caused by inadequate sewer lines and/or the inadequate design of the City of Tupelo's sewer." Doc. #41-1 at ¶ 6. The alleged conversations between Von Kurnatowski and Defendant's representatives are inadmissible hearsay and have not been considered in this opinion. *See Bellard v. Gauteaux*, 675 F.3d 454, 461 (5th Cir. 2012) ("Although … the law in the Fifth Circuit is that 'unobjected to hearsay may be considered by the trier of fact for such probative value as it may have, … this [is not] a requirement rather than permission to consider such evidence ….") (internal citations omitted); Fed. R. Evid. 802.

4

During the pendency of the *Adkins* action, two City employees, including Ford, were deposed. During her June 4, 2009, deposition, Ford testified that, in June 2008, she recommended to Von Kurnatowski that Evergreen Square: (1) replace its sewer lines; and (2) remove the garbage disposals in its units. Doc. #41-3. Also on June 4, 2009, City of Tupelo Code Enforcement Inspector Debra Byrd testified regarding a meeting between Von Kurnatowski and City officials. Doc. #41-4. Specifically, Byrd recounted that she asked Von Kurnatowski to bring Evergreen Square up to code within thirty days and that "his point of contention was he did not want to have do that in 30 days." *Id*. at 2–5. Subsequent testimony revealed that Evergreen made efforts to comply with the City's suggestions by replacing some of its pipes. *Id.* at 7–10. On March 17, 2010, the *Adkins* action was dismissed for lack of subject matter jurisdiction. Doc. #30-3.

On March 26, 2010, the State of Mississippi issued to "Tupelo POTW" a "Permit to Discharge Wastewater in Accordance with National Pollutant Discharge Elimination System" ("NPDES Permit"). Doc #41-8 at 3. The NPDES Permit contained numerous conditions and provided that "[t]he permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or denial of a permit renewal application." Doc. #41-8 at 16.

On September 2, 2010, Marcus Calvert, an Evergreen Square tenant, filed suit against FMS in the County Court of Lee County, Mississippi, seeking recovery for damages caused by "sewage backups." Doc. #30-4 at ¶ 13. Calvert's case was dismissed by reason of settlement on August 21, 2012.[3] Doc. #30-6.

---

[3] Defendants contend that Calvert's civil action was one of many suits filed by Evergreen Square's tenants against Defendants. Doc. #31 at 4. However, no record evidence supports this proposition.

On February 20, 2013, the law firm of Evans Petree PC sent a letter to Kim Hanna, City Clerk of the City of Tupelo. Doc. #41-6. The letter purported to be on behalf of: (1) "Evergreen Square LLC, a Illinois limited liability company;" (2) "Evergreen Square, LLC, a Delaware limited liability company;" and (3) "Fountainbleau Management Services, LLC, a Louisiana limited liability company." *Id*. The document stated that "[t]he purpose of this letter is to provide the City of Tupelo … with notice of Claimants' claims pursuant to Miss. Code Ann. § 11-46-11." *Id*. More specifically, the letter explained that the claimants were seeking redress for damages caused by the City of Tupelo's alleged failure to maintain its sewer system in compliance with standards set forth in its National Pollutant Discharge Elimination System ("NPDES") permit and Mississippi Department of Environmental Quality's *Guidance for the Design of Public Owned Wastewater Facilities*. *Id*.

On August 23, 2013, Plaintiffs[4] filed this action against Defendants City of Tupelo and Tupelo POTW.[5] Doc. #1. The complaint asserted two claims: (1) a breach of contract claim premised on alleged violations of the NPDES permit; and (2) a negligence claim arising from Defendants' alleged "negligent[] planning, developing, constructing, and/or maintaining the outfall sewer." *Id*. at ¶¶ 34–47.

---

[4] Like the February 20 notice, Plaintiffs' complaint misidentified the Evergreen entities as "Evergreen Square, LLC," rather than "Evergreen Apartments, LLC." Doc. #1. On January 24, 2014, Plaintiffs were granted leave to amend their complaint to remedy the caption error. Doc. #25.

[5] On March 20, 2014, this Court, noting that Plaintiffs failed to adequately allege jurisdiction, issued an order to show cause why this case should not be dismissed for lack of subject-matter jurisdiction. Doc. #47. The order to show cause also granted Plaintiffs leave to amend the jurisdictional allegations in the complaint. *Id*. On April 3, 2014, Plaintiffs responded to the order to show cause and filed an amended complaint with revised jurisdictional allegations. Doc. #54; Doc. #55. Additionally, and without leave to do so, the amended complaint omitted Evergreen Illinois as a plaintiff. Doc. #55. On August 12, 2014, this Court struck the amended complaint and directed Plaintiffs to file a second amended complaint which, "[b]ut for the inclusion of proper jurisdictional allegations as to each named party … must be unchanged from the original complaint in this action." Doc. #66. Plaintiffs filed a second amended complaint on August 19, 2014. Doc. #67. The second amended complaint contains sufficient jurisdictional allegations.

# III.
## Negligence Claim

In their motion, Defendants argue that the negligence claim is barred because: (1) the Plaintiffs' notice of suit was inadequate; (2) the statute of limitations on the claim has run; and (3) the design, construction, operation, and maintenance of the sewer line is a discretionary function. Doc. #31.

The Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, et seq., "provides for a limited waiver of sovereign immunity and permits the maintenance of only certain types of claims against … a governmental agency." *Liggans v. Coahoma Cnty. Sheriff's Dep't*, 823 So.2d 1152, 1154 (Miss. 2002). The MTCA "is the exclusive remedy for filing a lawsuit against [Mississippi] governmental entities and [their] employees." *City of Jackson v. Brister*, 838 So.2d 274, 278 (Miss. 2003). Claims brought under the MTCA are subject to a one-year statute of limitations and to certain notice requirements enumerated in the statute. *See* Miss. Code Ann. § 11-46-11(3). In addition to its procedural requirements, the MTCA explicitly exempts from its waiver of sovereign immunity actions based on certain acts or omissions. *See id.* § 11-46-9. Of relevance here, the statute provides that "[a] governmental entity … shall not be liable for any claim [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity …." *Id.* § 11-46-9(1)(d).

As a tort, a claim for negligence brought against a governmental entity must meet the MTCA's notice and timeliness requirements. *See Caves v. Yarbrough*, 991 So.2d 142, 147–50 (Miss. 2008) (considering MTCA's statute of limitations in negligence claim); *Estate of Spiegel v. W. Sur. Co.*, 908 So.2d 859, 863 (Miss. Ct. App. 2005) ("The record demonstrates that Spiegel did not comply with the notice of claim requirements of [the MTCA] and for that reason alone,

his [negligence] action against the circuit clerk and former circuit clerk could have been dismissed."). Negligence claims against governmental entities also are subject to the discretionary function exemption. *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234, 1239–40 (Miss. 1999). Both Defendants are indisputably governmental entities. Thus, based on Defendants' arguments, Plaintiffs' instant suit must be examined against the MTCA's notice and statute of limitations requirements, and the discretionary function exemption.

### A. Notice

The MTCA requires that "any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1). "The notice of claim requirement imposes a condition precedent to the right to maintain an action." *Gale v. Thomas*, 759 So.2d 1150, 1158 (Miss. 1999) (internal quotation marks omitted). The purpose of the MTCA "is to insure that governmental boards, commissioners, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon as possible when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies." *Lee v. Mem. Hosp. at Gulfport*, 999 So.2d 1263, 1266 (Miss. 2008).

With regard to the MTCA's notice requirement:

> there are seven [statutorily] required categories of information which must be included. The seven required categories are as follows: (1) the circumstances which brought about the injury; (2) the extent of the injury; (3) the time and place the injury occurred; (4) the names of all persons known to be involved; (5) the amount of money damages sought; (6) the residence of the person making the claim at the time of the injury; and (7) the claimant's residence at the time of filing the notice.

8

*South Cent. Reg'l Med. Ctr. v. Guffy*, 930 So.2d 1252, 1256 (Miss. 2006) (citing Miss. Code Ann. § 11-46-11(2)). While the failure to include any one of the required categories of information is fatal to an MTCA claim, if "some information in each of the seven required categories is provided, [a court] must determine whether the information is 'substantial' enough to be in compliance with the statute." *Id*. at 1258 (internal punctuation omitted).

> Here, Defendants submit that:
>
> Evergreen failed to satisfy the pre-suit notice requirement because the notice served in February 2013 was erroneously file[d] on behalf of "Evergreen Square LLC." Although Evergreen recently sought permission from the court to amend its complaint to "correct" the name of the plaintiff to "Evergreen Apartment, LLC," that does not cure the historical fact that the pre-suit notice was filed on behalf of the wrong entity.

Doc. #31 at 7.

Defendants appear to argue that, insofar as the notice purported to be on behalf of Evergreen Square LLC (rather than Evergreen Apartment, LLC), the Evergreen entities did not meet the notice requirement and thus may not bring an MTCA action. Such a contention rests on the assumption that an MTCA notice is invalidated by a misnomer in the name of a claimant.

As explained above, the statutory notice requirement provides that a "person must file a notice of claim with the chief executive officer of the [relevant] governmental entity" and that such notice must include seven statutorily prescribed categories of information. Miss. Code Ann § 11-46-11(1)(b). Although the statute requires that a claimant provide past and current addresses, there is no specifically enumerated requirement that a claimant provide a precise name. This omission weighs against Defendants' proffered reading of the statute. *See Shelter Mut. Ins. Co. v. Dale*, 914 So.2d 698, 702 (Miss. 2005) ("This Court has enunciated the now-familiar principle that where a statute enumerates and specifies the subject or things upon which

9

it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause.") (internal quotation marks omitted).

Furthermore, while Mississippi courts appear to have not addressed the issue of a misnamed claimant, federal courts have held that "[t]he relevant criteria for a correct [Federal Tort Claims Act] administrative claim is whether the agency was fully aware of who were the individuals actually pursuing the claim and the nature of the total claim." *Wojciechowicz v. U.S.*, 474 F.Supp.2d 283, 288 (D.P.R. 2007) (internal emphasis, punctuation, and quotation marks omitted). This holding resonates with the MTCA's notice requirement's purpose of allowing a government entity to take corrective action with regard to the alleged wrongful conduct. *Lee*, 999 So.2d at 1266.

Based on the purpose of the notice statute, the absence of an express requirement in the statute, and relevant federal jurisprudence, the Court concludes that a claimant's misidentification of itself in an MTCA notice does not bar a subsequent suit so long as the notice made the relevant government agency fully aware of the claimant's identity. In the present case, the February 20 notice: (1) identified Evergreen Illinois as the former owner of the Evergreen Square Apartments; (2) identified Evergreen Delaware as the current owner of the Evergreen Square Apartments; and (3) provided the name and address of the managing company of the apartment complex (FMS). Under these circumstances, the Court concludes that, notwithstanding the slight misnomer in the letter, Defendants were fully aware of the identities of the entities pursuing the MTCA claim and that, therefore, the Evergreen entities satisfied the notice requirement of the MTCA. *See generally Lee*, 999 So.2d at 1267 (notice requirement satisfied where defendant hospital "was able to identify [plaintiff] as a patient and investigate and conduct a 'review of the matter'").

### B. Statute of Limitations

The MTCA provides that "[a]ll actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after …." Miss. Code Ann. § 11-46-11(3)(a). Defendants argue that Plaintiffs claims fall outside the applicable statute of limitations. In response, Plaintiffs submit that the claims are timely insofar as Defendants' allegedly wrongful actions amount to a continuing tort, and that even if the claims are untimely, Defendants are equitably estopped from invoking the statute of limitations. Doc. #42 at 6–21. Because the Court concludes below that Plaintiffs' negligence claim is barred by discretionary immunity, it need not address the statutory limitations argument.

### C. Discretionary Function

As explained above, the MTCA provides that "[a] governmental entity … shall not be liable for any claim [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity …." Miss. Code Ann. § 11-46-9(1)(d). To this end, the Mississippi Supreme Court has explained that:

> [t]he method of determining whether an act is discretionary or ministerial is well-settled. A duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee. However, a duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's choice or judgment. This Court employs the public-policy function test when determining whether an act of a governmental entity or its employee is discretionary. Under this test, the Court must answer two questions: 1) did the conduct or activity involve an element of choice or judgment; and if so, 2) did that choice or judgment involve social, economic, or political policy?

*Fortenberry v. City of Jackson*, 71 So.3d 1196, 1199 (Miss. 2011) (internal citations omitted). As an affirmative defense, a defendant bears the burden of proving discretionary immunity. *See Doe v. Rankin Cnty. Sch. Dist.*, No. 2012-CA-01163, __ So.3d __, 2013 WL 6438716, at *6

11

(Miss. Ct. App. Dec. 10, 2013) (discretionary immunity is affirmative defense to MTCA); *R.J. Reynolds Tobacco Co. v. King*, 921 So.2d 268, 272 (Miss. 2005) ("The burden rests upon the defendant, not the plaintiff, to prevail on an affirmative defense."). In determining the scope of the discretionary exemption, the Mississippi Supreme Court has looked to case law interpreting the Federal Tort Claims Act. *See Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So.3d 68, 72–73 (Miss. 2012) (citing *U.S. v. Gaubert*, 499 U.S. 315 (1991)).

Necessarily, the first step in the discretionary authority inquiry is to define the conduct at issue. *Merando v. U.S.*, 517 F.3d 160, 165 (3d Cir. 2008). Analytically, Plaintiffs' negligence claim may be separated into two types of conduct—the negligent design and construction of the sewer, and the negligent operation and maintenance of the sewer.

### 1. Operation and Maintenance

As a general matter, Mississippi law "clearly allows [a] City to operate and maintain its sewage system according to its discretion." *Fortenberry*, 71 So.3d at 1200 (citing Miss. Code Ann. § 21-27-189(b)). In *Fortenberry*, the Mississippi Supreme Court considered an MTCA negligence claim brought by two property owners against the City of Jackson where the owners alleged property damage from sewage backups caused by the City of Jackson's operation and maintenance of its sewer system. *Id*. at 1198–99. In a 5-4 decision, the Mississippi Supreme Court held that the operation and maintenance of Jackson's sewer system was a discretionary function and thus could not provide a cognizable claim under the MTCA. *Id*. at 1204.

While the ultimate result of *Fortenberry* seems to foreclose Plaintiffs' negligence claim, the text of the opinion reveals a narrow holding. In reaching its conclusion, the *Fortenberry* court wrote:

> Mississippi law provides a municipality with discretion to operate and maintain its sewage system, but Mississippi has established an agency to

> monitor pollution, the Mississippi Department of Environmental Quality ("MDEQ"). *The plaintiffs alleged no law or regulation established by the MDEQ which sets forth a specific procedure for operating and maintaining sewage systems. Moreover, no allegations were made that the City is in violation of any state or federal regulation or law or of any of its waste-removal and treatment permits.* Accordingly, the City's decision remains a discretionary function.

*Fortenberry*, 71 So.3d at 1203 (emphasis added). By explicitly noting the absence in the record of relevant laws and regulations, *Fortenberry* allowed for the possibility that such rules could limit the inherently discretionary function of maintaining and operating a sewer. Accordingly, in resolving the first prong of the discretionary function inquiry, the Court must decide whether the City's general discretion to operate its sewer system was limited by (1) "a law or regulation established by the MDEQ which sets forth a specific procedure for operating and maintaining sewage systems;" or (2) an allegation "that the City is in violation of any state or federal regulation or law or any of its waste-removal and treatment permits." *Id*.

### a. Element of Choice

Conduct is ministerial and not discretionary if "the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Stewart ex rel. Womack v. City of Jackson*, 804 So.2d 1041, 1048 (Miss. 2002) (internal quotation marks omitted). Plaintiffs argue that Defendants' discretion to operate the sewer was limited by: (1) the NPDES Permit and the permit requirement of the Mississippi Water Pollution Control Law ("MWPCL"), Miss. Code Ann. § 49-17-1, *et seq*.; (2) regulations promulgated by the MDEQ; (3) guidelines promulgated by the MDEQ; and (4) various regulations promulgated by the federal Environmental Protection Agency. Doc. #42 at 24–29.

13

### i. NPDES Permit and MWPCL

The MWPCL created the MDEQ and requires entities, including municipalities, to obtain a permit before operating and maintaining a sewer system. Miss. Code Ann. §§ 49-17-17, 49-17-19. Plaintiffs cite to the MWPCL's permit requirement and to three sections of the NPDES Permit as evidence that Tupelo's operation of the sewer system was ministerial rather than discretionary: Condition T-17, Condition T-18, and Condition T-27. Doc. #42 at 24–25.

Condition T-17 provides "[a]ll discharges authorized herein shall be consistent with the terms and conditions of this permit. The discharge of any pollutant identified in this permit more frequently than or at a level in excess of that authorized shall constitute a violation of the permit."[6] Doc. #41-8. In the same vein, Section T-18 directs that "[t]he permittee shall take all reasonable steps to minimize or prevent any discharge in violation of the permit that has a reasonable likelihood of adversely affecting human health or the environment. *Id*. Finally, in a somewhat axiomatic statement, Condition T-27 provides that "[t]he permittee must comply with all conditions of this permit." *Id*.

### ii. MDEQ Regulations

As further support for their ministerial argument, Plaintiffs cite multiple regulations contained in the *Wastewater Regulations for National Pollutant Discharge Elimination System (NPDES) Permits, Underground Injection Control (UIC) Permits, State Permits, Water Quality Based Effluent Limitations and Water Quality Certification* promulgated by the MDEQ ("MDEQ Regulations"). Doc. #42 at 26 (citing Doc. #41-7). Specifically, Plaintiffs cite Regulation I.C.1(c), Regulation I.C.1(e), and Regulation IV.A.18. Doc. # 42 at 26.

---

[6] The permit sets forth specific "Discharge Limitations" for a wide array of pollutants. Doc. #41-8.

Regulation I.C.1(c) provides that "[n]o permit for the construction or operation of a wastewater treatment facility shall be issued unless the applicant can demonstrate to the satisfaction of the Permit Board that a qualified operator will be made available to operate and maintain the facility." MDEQ Regulations, I.C.1(c). I.C.1(e) provides that "[t]he Permit Board may deny a permit if it determines that the discharge from the proposed facility will adversely affect use of the receiving waters, by unreasonably degrading the same, or will adversely affect public health, welfare or the environment. *Id.* at I.C.1(e).

Finally, Plaintiffs identify Regulation IV.A.18 as "[m]ost poignant for th[e discretionary function] analysis." Doc. #42. The regulation states:

> The permittee shall at all times properly operate, maintain, and when necessary, promptly replace all facilities and systems of collection, treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit. Proper operation and maintenance includes adequate laboratory controls and appropriate quality assurance procedures. Proper replacement includes maintaining an adequate inventory of replacement equipment and parts for prompt replacement when necessary to maintain continuous collection and treatment of wastewater. This provision requires the operation of back-up or auxiliary facilities or similar systems which are installed by a permittee only when the operation is necessary to achieve compliance with the conditions of the permit. The Permit Board may require regular reporting of internal operational and maintenance parameters necessary to confirm proper operation of a waste treatment system.

MDEQ Regulations, at IV.A.18.

### iii. MDEQ Guidance

The *Mississippi Department of Environmental Quality Guidance for the Design of Publicly Owned Wastewater Facilities and DWSIRLF Funded Drinking Water Facilities* identifies itself as a "guide in the design and preparation of plans and specifications for publicly owned wastewater facilities." MDEQ PWOF at Ch. 10.2. However, the document cautions that

15

it "is not a regulation or a standard and has therefore not been adopted by the Commission on Environmental Quality." *Id*.

### iv. *Federal Regulations*

Finally, Plaintiffs cite to the implementing regulations of the Clean Water Act, 33 U.S.C. § 1251, et seq. Doc. #42 at 29. However, *Fortenberry* explicitly held that the "Act is a set of goals and policies of Congress, and it does not provide a set of standards that a municipality must follow in operating and maintaining its sewage system." 71 So.3d at 1203 (citing 33 U.S.C. § 1251).

### v. *Summary of Review of Laws and Regulations*

As explained above, *Fortenberry* appears to hold that an entity's discretionary authority to operate and maintain its sewer could be limited by either a "law or regulation established by the MDEQ which sets forth a specific procedure for operating and maintaining sewage systems" or "allegations … that the [entity] is in violation of any state or federal regulation or law or of any of its waste-removal and treatment permits." 71 So.3d at 1199.

Insofar as the federal regulations and MDEQ Guidance do not bind the City, they necessarily may not be considered as limits on the City's discretionary authority. *See Fortenberry*, 71 So.3d at 1203 (Clean Water Act could not make sewer operation ministerial because it was not binding on municipalities). For the same reason, MDEQ Regulations I.C.I(c) and (e), which only place limitations on when the Permit Board may issue a permit, play no role in the discretionary authority analysis.

With respect to the MWPCL's permit requirement, it is clear that it does not set forth a <u>specific procedure</u> for operating or maintaining a sewer system. Similarly, while taken together, the MDEQ Regulation IV.A.18, and the NPDES Permit establish specific standards regarding

16

the quantity and frequency of discharge of pollutants, they do not, in the words of *Fortenberry*, "set[] forth a specific procedure for operating and maintaining a sewage system[.]" 71 So.3d at 1203. Indeed, rather than setting forth specific requirements for meeting the terms of the permit, section IV.A.18 places broad discretion on how a municipality should comply by setting forth nebulous standards, such as "adequate laboratory controls," "appropriate quality assurance procedures," and "maintaining an adequate inventory of replacement equipment and parts." MDEQ Regulations, at IV.A.18.

In other words, while the City lacked discretion in discharging pollutants, it maintained discretion in the general operation and maintenance of its sewer. S*ee generally Cazales v. Lecon, Inc.*, 994 F.Supp. 765, 775 (S.D. Tex. 1997) (in conducting regulation-mandated weekly inspection, "Safety Officer was entitled to exercise his discretion in determining the amount of scrutiny exercised in his weekly inspections and the geographical and temporal scope of those inspections"). Accordingly, the Court concludes that Plaintiffs have failed to satisfy the first *Fortenberry* standard.

Although Plaintiffs cannot show a regulation or law setting forth specific procedures for operating or maintaining a sewer system, they can still defeat discretionary immunity by alleging that Defendants exercised discretion in such a way as to result in the violation of federal or state law. *Fortenberry*, 71 So.3d at 1199.

Here, Plaintiffs allege that, by virtue of Defendants' negligent operation and maintenance of the sewer system, sewage backed-up, overflowed, and damaged their property. Doc. #1 at ¶¶ 42–43. As explained above, the only binding standards cited by Plaintiff are the MWPCL, the MDEQ Regulations, and the NPDES Permit relating to the "discharge" of pollutants. However,

17

Plaintiff has failed to allege, much less introduce evidence, that the back-ups or resulting overflows violated any of the cited laws or standards.

In sum, Plaintiffs have failed to show that the operation and maintenance of the sewer system lacked an element of choice. Accordingly, the Court concludes that the first prong of the discretionary function test has been met.

### b. Element of Policy

*Fortenberry* held that the act of maintaining and operating a sewer involved social, economic, and political policy. 71 So.3d at 1202. Lacking any authority to overturn this conclusion, this Court holds the same.

### c. Summary

The Court concludes that the Defendants' maintenance and operation of the sewer was an exercise of discretionary authority. Thus, Plaintiff's negligence claim based on the same must fail. Miss. Code Ann. § 11-46-9(1)(d).

## 2. Negligent Design and Construction

As for the allegations of Plaintiffs' claim arising from negligence in design and construction, the Mississippi Supreme Court has held that a "municipality has discretion to determine whether it will construct a system of … sewers … as well as discretion to determine the nature, extent, capacity, and cost of the system [and] the time and manner of its construction …." *City of Greenville v. Queen City Lumber Co.*, 86 So.2d 860, 863 (Miss. 1956). This choice is reflected in the Mississippi Code, which gives municipalities the "discretion [t]o construct … sewage treatment facilities." Miss. Code Ann. § 21-27-189(b). Based on this grant of authority, and the absence of binding relevant statutes or regulations governing the design and construction of sewers, the Court concludes that the design and construction of sewers involves an element of

choice. Furthermore, insofar as the Mississippi Supreme Court has held that the "operat[ion] and mainten[ance] [of] sewage systems clearly implicate[s] … economic and social policy," *Fortenberry*, 71 So.3d at 1202, the Court further concludes that the design and construction of such systems implicates such policies. Accordingly, Defendants' construction and design of the sewer system was a discretionary function, and therefore may not be the subject of a negligence claim. *See Caraher v. City of Menomonie*, 649 N.W.2d 344, 348 (Wis. Ct. App. 2002) ("The design, approval and construction of a sewer system is a discretionary act entitling a municipality to immunity from any claim that challenges the design and construction of the sewer system.").

## IV
## Breach of Contract Claim

Plaintiffs' complaint also asserts a claim for breach of contract based upon alleged violations of the NPDES Permit. Doc. #1 at ¶¶ 34–38. In their brief, Plaintiffs argue that they are intended third-party beneficiaries of the NPDES Permit and that Defendants violated the NPDES Permit. Doc. #42 at 32.

"For a third-party beneficiary to exist, a valid contract must first exist." *GGNSC Batesville, LLC v. Johnson*, 109 So.3d 562, 565 (Miss. 2013). The Mississippi Supreme Court has held that government licenses[7] to perform an activity are "not … contract[s] between the sovereign and the licensee." *Geiger v. Mississippi State Bd. of Cosmetology*, 151 So.2d 189, 191 (Miss. 1963) (citing *Davis v. Sheppherd*, 139 So.2d 668 (Miss. 1962)). This conclusion has been repeated in courts throughout the country. *See, e.g., U.S. ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004) ("Nothing in the complaint or amended complaint even suggests that Georgia Gulf had any sort of contractual or other economic relationship with the

---

[7] A permit is a license. *See* Black's Law Dictionary (9th ed. 2009), permit (defining "permit" as a "license")).

government, or indeed any relationship at all other than having a permit authorizing certain PVC emissions."); *Patzer v. City of Loveland*, 80 P.3d 908, 911 (Col. Ct. App. 2003) (building permit setting forth conditions "was intended as a license, not a contract"); *Alexander v. Marion Cnty. Sheriff*, 891 N.E.2d 87, 94 (Ind. Ct. App. 2008) ("A license is not a contract between the state and the licensee, but is a mere personal permit."). Because the NPDES Permit was not a contract, Plaintiffs cannot be third-party beneficiaries, and their breach of contract claim must fail.

## V.
## Conclusion

Plaintiffs' negligence claim is barred by the discretionary function exemption of the MTCA. Plaintiff's breach of contract claim fails for the lack of an enforceable contract. Accordingly, Defendants' motion is **GRANTED**.[8]

SO ORDERED, this the 22nd day of August, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] Having found that Plaintiffs' claims fail on the merits, the Court will not address Defendants' argument that Defendant Tupelo POTW is not amenable to suit.