IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

EVERGREEN APARTMENTS, LLC,                                            PLAINTIFFS
a Illinois limited liability company;
EVERGREEN APARTMENTS, LLC,
a Delaware limited liability company; and
FOUNTAINBLEAU MANAGEMENT                          NO. 1:13-CV-00157-DMB-DAS
SERVICES, LLC, a Louisiana limited
liability company

V.

CITY OF TUPELO, and TUPELO POTW                                      DEFENDANTS

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action is before the Court following the Fifth Circuit's remand for the

reconsideration of Defendants' motion to dismiss, or in the alternative, for summary judgment, in

light of a "change in relevant state law during the pendency of [the] appeal." Doc. #30;

*Fountainbleau Mgmt. Servs., L.L.C. v. City of Tupelo*, 599 F. App'x 207, 207 (5th Cir. 2015).

Because the Court concludes Plaintiffs' claims are barred by the applicable statute of limitations

and discretionary immunity, the motion will be granted.

I
Procedural History

On August 23, 2013, Plaintiffs Evergreen Apartments, LLC,[1] an Illinois limited liability

company ("Evergreen Illinois"); Evergreen Apartments, LLC, a Delaware limited liability

---

[1] The original complaint erroneously identified Evergreen Illinois and Evergreen Delaware as, respectively,
"Evergreen Square, LLC, a Illinois limited liability company" and "Evergreen Square, LLC, a Delaware limited
liability company." *See* Doc. #1. On January 8, 2014, Plaintiffs filed a "Motion to Correct Names of Plaintiffs,"
which United States Magistrate Judge David A. Sanders granted on January 24, 2014. Doc. #19; Doc. #25. In
addition, the complaint, with leave of court, was amended to correct its jurisdictional allegations, Doc. #55, and to
re-add a party improperly omitted from the first amendment, Doc. #67. None of the three amendments changed the
substantive allegations of the complaint.

company ("Evergreen Delaware"); and Fountainbleau Management Services, LLC, filed a two-count complaint against Defendants City of Tupelo ("City") and Tupelo POTW.[2]  Doc. #1.  The original complaint alleged claims for negligence and breach of contract arising from Defendants' alleged failure to exercise due care in the design, planning, construction, and maintenance of the City's sanitary sewer system.  *Id*.  Defendants answered the complaint on October 21, 2013, asserting numerous defenses, including assertions that Plaintiffs' claims were barred by the statute of limitations and the discretionary function exemptions of the Mississippi Tort Claims Act.  Doc. #10 at 1.

On February 7, 2014, Defendants filed a motion to dismiss, or in the alternative, for summary judgment.  Doc. #30.  The motion sought dismissal of Plaintiffs' claims against Tupelo POTW on the ground that Tupelo POTW is not an entity amenable to suit.  *Id*. at 14.  The motion also sought dismissal of the breach of contract claim for lack of an enforceable contract, and dismissal of the negligence claims on the grounds that Plaintiffs failed to provide statutorily required notice, the suit was not brought within the applicable statute of limitations, and the suit was barred by governmental immunity.  *Id*. at 6–14.  Plaintiffs responded in opposition to the motion, Defendants replied, and Plaintiffs, with leave of the Court, filed a sur-reply.  Doc. #41; Doc. #52; Doc. #65.

On August 22, 2014, this Court issued a memorandum opinion and order interpreting Defendants' motion as one for summary judgment, and granting summary judgment on all claims.  Doc. #68.  In the order, the Court found that Plaintiffs complied with the statutory notice requirements but that the negligence claims were subject to dismissal because of discretionary immunity and because the breach of contact claim failed for lack of a contract.  *Id*. at 20.  Having

---

[2] "'POTW' means a publicly owned treatment works."  Miss. Admin. Code § 11-6:1.1.1(A)(53).

reached these conclusions, the Court declined to address the arguments based on the statute of limitations or Tupelo POTW's amenability to suit. *Id*. at n.8.

Plaintiffs appealed the dismissal of their negligence claims, and the Fifth Circuit vacated the grant of summary judgment based on a "change in relevant state law during the pendency of [the] appeal." *Fountainbleau Mgmt. Servs., L.L.C.*, 599 F. App'x at 207. The Fifth Circuit remanded "the case for review in the light of *Boroujerdi* [*v. City of Starkville*, 158 So.3d 1106 (Miss. 2015),] and *Brantley* [*v. City of Horn Lake*, 152 So.3d 1106 (Miss. 2014),] and for such further proceedings as the district court, in its discretion, may feel are necessary and appropriate." *Id*. In doing so, the Fifth Circuit observed that "[o]n remand, the district court may also wish to consider the parties' other arguments, including the statute-of-limitations issue and the question of whether Tupelo POTW is a legal entity capable of being sued." *Id*. at n.2.

Following remand, this Court directed the parties to submit additional briefing on the change in law and its impact, if any, on Defendants' motion. Doc. #73. Supplemental briefs were submitted on behalf of all parties. Doc. #74; Doc. #76.

## II
## Applicable Standard

In their motion, Defendants seek dismissal of all of Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure, or summary judgment on all claims pursuant to Rule 56. In support of their motion, Defendants attached numerous materials outside the pleadings. *See, e.g.,* Doc. #30-1. Similarly, in their response opposing the motion, Plaintiffs attached various non-pleading exhibits. *See, e.g.,* Doc. #41-1. Based on these evidentiary submissions, the Court, in its August 22, 2014, order, treated the motion as a motion for summary judgment. Doc. #68 at 1–2. Neither party appealed this interpretation. Accordingly, the Court will continue to treat the motion as one for summary judgment post-remand.

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 22–23 (1986)). To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Norwegian Bulk Transp. A/S,* 520 F.3d at 411–12 (internal quotation marks and citation omitted). To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

"If … the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.,* 639 F.3d 186, 191–92 (5th Cir. 2011) (citation and internal punctuation omitted). When considering a motion for summary judgment, the Court must "resolve factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

### III
### Relevant Facts

### A. Parties

The President's Gate Apartments, formerly known as the Evergreen Square Apartments ("Evergreen Square"), are owned by Evergreen Delaware. Doc. #41-6 at 1. Evergreen Delaware was formed as a part of the dissolution of Evergreen Illinois. Doc. #54-1 at ¶¶ 3–4. Fountainbleau Management Services, LLC ("FMS"), is the former manager of Evergreen Illinois and the current manager of Evergreen Delaware. Doc. #41-1 at ¶¶ 3–4.

### B. Initial Flooding

On or about April 11, 2008, the Department of Development Services for the City of Tupelo received reports regarding "major sewage problems" at Evergreen Square, "including raw sewage backing up into some of the apartments." Doc. #30-1 at ¶¶ 3, 5. Between April 11, 2008, and October 5, 2008, certain unnamed "officers, employees and representatives of Evergreen Square and Fountainbleau Management Services," contacted Lynda Ford, Inspector at the Department of Development Services. *Id.* at ¶¶ 3, 7. According to Ford, the anonymous representatives "asserted … that the sewage problems were caused by … inadequate sewer lines and the inadequate design of the City of Tupelo's sewer system and were not caused by the sewer lines at Evergreen Square Apartments." *Id.* at ¶ 7. To address the sewer problems, Ford:

> requested that certain employees of Tupelo Water & Light check the City sewer lines in an effort to confirm there was obstruction in the City sewer. After this was completed, it was determined there was no obstruction with the City's sewer lines and the problems were, in fact, caused by the sewer lines at Evergreen [S]quare Apartments.

*Id.* at ¶ 8.

On or about June 2008, City of Tupelo Code Enforcement Inspector Debra Byrd met with Roland T.A. Von Kurnatowski, Jr., the managing member of FMS, regarding the flooding at

Evergreen Square.  Doc. #41-4 at 18–22; Doc. #41-1 at ¶ 2.  At this meeting, Byrd asked Von Kurnatowski to bring Evergreen Square up to code within thirty days.  Doc. #41-4 at 21.  Specifically, Evergreen Square was "required by the City of Tupelo to repair and/or replace their sewer lines."  Doc. #30-1 at ¶¶ 8–9.  Evergreen Square partially complied with this directive on or about October 5, 2008, by replacing "certain" sewer lines.  *Id*. at ¶ 9; Doc. #41-4 at 43.  Sometime later, Von Kurnatowski attended a second meeting with Byrd "to follow up … to make sure that he was doing what [was] requested [after the] first meeting."  Doc. #41-4 at 29.

For his part, Von Kurnatowski avers that he "did not have any conversations with Linda Ford between April 11, 2008 and October 5, 2008 in which I asserted that the sewage problems being experienced at the Evergreen Square property were caused by inadequate sewer lines and/or the inadequate design of the City of Tupelo's sewer."[3]  Doc. #41-1 at ¶ 5.

## C. *Adkins* Lawsuit

On November 3, 2008, individual tenants at Evergreen Square filed a civil action in this Court against FMS and certain individual defendants.  *Adkins v. Fountainbleau Mgmt. Servs., LLC*, No. 1:08-cv-00257 (N.D. Miss. Nov. 3, 2008) (Doc. #1).  In their amended complaint, filed August 10, 2009, the tenants alleged, among other things, that FMS was "informed … that the repeated sewer backups were due to aging, blocked lines and could not be stopped without replacing the main sewer service lines connecting Evergreen Square's buildings to the city sewer system."  Doc. #30-2 at ¶ 11.

---

[3] Von Kurnatowski's affidavit also claims that he "conferred with all authorized representatives of Evergreen [Delaware], Evergreen [Illinois], and [FMS] and confirmed that none of these individuals had any conversations with Lynda Ford between April 11, 2008 and October 5, 2008 in which they asserted that the sewage problems being experienced at the Evergreen Square property were caused by inadequate sewer lines and/or the inadequate design of the City of Tupelo's sewer."  Doc. #41-1 at ¶ 6.  The alleged conversations between Von Kurnatowski and these unnamed representatives are inadmissible hearsay and have not been considered in this opinion.  *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) ("Although … the law in the Fifth Circuit is that unobjected to hearsay may be considered by the trier of fact for such probative value as it may have, … this [is not] a requirement rather than permission to consider such evidence ….") (internal citation and quotation marks omitted); Fed. R. Evid. 802.

During the pendency of the *Adkins* action, Byrd and Ford were deposed. During her June 4, 2009, deposition, Ford testified that in order to alleviate the flooding problems, Evergreen Square should replace its sewer lines and remove the garbage disposals in its units. Doc. #41-3 at 31. Ford testified that she made this recommendation to Von Kurnatowski at an unspecified time. *Id*. In a June 2009 deposition, Byrd testified that she had been told by a plumber who worked on Evergreen Square's building that Evergreen Square's pipes were too small. Doc. #41-4 at 42–43.

On March 17, 2010, the *Adkins* action was dismissed for lack of subject matter jurisdiction.[4] *Adkins*, 1:08-cv-257, (N.D. Miss. Mar. 17, 2010) (Doc. #80).

### D. Tupelo POTW Permit

On March 26, 2010, the State of Mississippi issued to "Tupelo POTW" Permit MS0036111 to "Discharge Wastewater in Accordance with National Pollutant Discharge Elimination System" ("NPDES Permit"). Doc #41-8. It appears the issuance was in the nature of a renewal, as records show Tupelo POTW has held the same permit number since at least 1995. *See id.* at A-1.

The NPDES Permit contains numerous conditions on "discharges" of various chemicals and substances[5] and provides that "[t]he permittee must comply with all conditions of this permit." Doc. #41-8 at 10.

---

[4] In addition to the *Adkins* action, on September 2, 2010, Marcus Calvert, an Evergreen Square tenant, filed suit against FMS in the County Court of Lee County, Mississippi, seeking recovery for damages caused by "sewage backups." Doc. #30-4 at ¶ 13. Calvert's case was dismissed by reason of settlement on August 21, 2012. Doc. #30-6. Defendants contend that Calvert's civil action was one of many suits filed by Evergreen Square's tenants against Defendants. *See* Doc. #31 at 3–4. No record evidence, however, supports this proposition.

[5] Specifically, the NPDES Permit limits the quantity and quality of discharges of nitrogen, phosphorous, ammonia nitrogen, fecal coliform, "flow," oxygen, pH, "sludge," and "solids." Doc. #41-8 (Limits and Monitoring 1–3).

**E.  This Action**

On February 20, 2013, the law firm of Evans Petree PC sent a letter to Kim Hanna, City Clerk for the City of Tupelo.  Doc. #41-6.  The letter purported to be on behalf of:  (1) "Evergreen Square LLC, a Illinois limited liability company;" (2) "Evergreen Square, LLC, a Delaware limited liability company;" and (3) "Fountainbleau Management Services, LLC, a Louisiana limited liability company."  *Id*. at 1.  It stated, "The purpose of this letter is to provide the City of Tupelo … with notice of Claimants' claims pursuant to Miss. Code Ann. § 11-46-11."  *Id*.  More specifically, the letter explained that the claimants were seeking redress for damages caused by the City of Tupelo's alleged failure to maintain its sewer system in compliance with standards set forth in its NPDES Permit and the Mississippi Department of Environmental Quality's *Guidance for the Design of Public Owned Wastewater Facilities*.  *Id*. at 2–3.

On August 23, 2013, Plaintiffs filed this action against the City of Tupelo and Tupelo POTW.  Doc. #1.

**IV**
**Analysis**

On remand, three issues remain before the Court:  (1) whether Tupelo POTW is an entity amenable to suit; (2) whether the negligence claims are barred by the statute of limitations; and (3) whether Defendants are entitled to discretionary immunity from Plaintiffs' negligence claims.

**A.  Tupelo POTW**

In its motion for summary judgment, Defendants, without citing legal authority or evidence, seek dismissal of the claims against Tupelo POTW on the ground that "Tupelo POTW is not a legal entity as a reference to the Mississippi Secretary of State's corporate filings verifies."  Doc. #31 at 14 (internal quotation marks omitted).  Plaintiffs respond that "Defendants

offer no law to support their apparent position that only entities registered with the Mississippi Secretary of State have the capacity to be sued in a Federal Court sitting in Mississippi." Doc. #42 at 34.

As explained above, the movant for summary judgment "bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp.*, 520 F.3d at 412. Where, as here,[6] the non-moving party bears "the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris,* 144 F.3d at 380. While this burden is not onerous, it requires more than a single unsupported assertion of law. *See Lilani v. Noorali*, No. H-09-2617, 2011 WL 13667, at *5 (S.D. Tex. Jan. 3, 2011) ("Because the Defendants do not cite to any legal authority in support of their summary-judgment arguments, the court concludes they have not met their summary-judgment burden and will deny the Defendants' Summary–Judgment Motion as to Lilani's claim for failure to issue shares.").[7]

Defendants, without citation to authority or evidence,[8] argue that Tupelo POTW is not a legal entity and, therefore, lacks the capacity to be sued. Doc. #31 at 14. Defendants do not

---

[6] "The plaintiff has the burden of showing that the city or county department has the capacity to be sued." *Johnson v. Miles*, No. 1:07-cv-507, 2008 WL 4524823, at *3 (E.D. Tex. Sep. 29, 2008) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)).

[7] *See also J & J Prods., Inc. v. Schmalz*, No. C-1-09-305, 2010 WL 3655985, at *3 (S.D. Ohio Sep. 14, 2010) ("It is TWC's responsibility to demonstrate that it is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Therefore, TWC fails to meet this burden when it cites to no case law or other legal authority in support of its argument."); *Smith v. Loudoun Cty. Pub. Sch.*, No. 1:15-cv-956, 2016 WL 659786, at *11 (E.D. Va. Feb. 18, 2016) ("[C]ursory analysis … is insufficient to carry Defendant's burden at summary judgment."); *Mireles Harvesting and Packing Co., Inc. v. Westport Ins. Corp.*, No. CV04-1488, 2006 WL 496002, at *7 (D. Ariz. Mar. 1, 2006) ("Since Westport Insurance has not explained or provided authority for its motion and has not cited contractual language suggesting Gary Mattison's appraiser appropriately calculated the reimbursement, Westport Insurance has failed to carry its initial burden on summary judgment.").

[8] Defendants cite to the Mississippi Secretary of State's website, but cite no authority or evidence for the proposition that the website represents a comprehensive listing of "legal entities" amenable to suit.

clarify what they mean by "legal entity" or why its undefined meaning does not apply to Tupelo POTW. Under these circumstances, the Court concludes that Defendants have failed to meet their initial burden on this issue and that, therefore, summary judgment must be denied on the issue of Tupelo POTW's capacity to be sued.[9]

## B. Statute of Limitations

The Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, et seq., "provides for a limited waiver of sovereign immunity and permits the maintenance of only certain types of claims against … a governmental agency." *Liggans v. Coahoma Cty. Sheriff's Dep't*, 823 So.2d 1152, 1154 (Miss. 2002). The MTCA "is the exclusive remedy for filing a lawsuit against [Mississippi] governmental entities and [their] employees." *City of Jackson v. Brister*, 838 So.2d 274, 278 (Miss. 2003). Claims brought under the MTCA must be "commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after." Miss. Code Ann. § 11-46-11(3). Under the statute, "filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the [designated official] of a political subdivision receives the notice of claim." *Id.*

A defendant bears the burden of showing a claim is barred by an applicable statute of limitations.[10] *Jenkins v. Pensacola Health Tr., Inc.*, 933 So.2d 923, 927 (Miss. 2006). "[W]hen a defendant pleads the statute of limitations as a defense and shows that the suit is thereby barred, he has met this burden of proof." *Id.* To show that a suit is barred by a statute of

---

[9] In reaching this conclusion, the Court notes that the Mississippi Supreme Court has held that unincorporated associations may be amenable to suit under state law. *See Beta Beta Chapter of Beta Theta Pi Fraternity v. May*, 611 So.2d 889, 893–94 (Miss. 1992); *see also* Fed. R. Civ. P. 17(b)(3) (capacity to be sued for unincorporated entities determined by law of forum state).

[10] "[T]he burden of proof is a matter of substance and in a diversity case is, therefore, governed by the State law." *Kirby Lumber Corp. v. White*, 288 F.2d 566, 571 (5th Cir. 1961).

limitations, a defendant must prove that the relevant cause of action accrued outside the statute's limitation period. *Id*. This burden requires a defendant to "show that the claims for which [a plaintiff] did not provide a specific date of occurrence were barred by [the] statute [of limitations]." *Id*. If a defendant makes this showing, the burden shifts to the plaintiff to "show some legal or equitable basis for avoiding such period of limitations." *Hall v. Dillard*, 739 So.2d 383, 387–88 (Miss. Ct. App. 1999).

In this case, there is no question Defendants pled a statute of limitations defense in their answer. *See* Doc. #10 at 1. Thus, the question is whether they have shown Plaintiffs' negligence claims accrued on or before November 26, 2012.[11] *Dillard*, 739 So.2d at 387–88. If Defendants satisfy this burden, Plaintiffs must show a legal basis for setting aside the limitations period. *Id*.

## 1. Date of accrual

"[T]he limitations period for MTCA claims does not begin to run until all the elements of a tort exist, and the claimant knows, or in the exercise of reasonable diligence, should know of both the injury and the act or omission which caused it." *Caves v. Yarbrough*, 991 So.2d 142, 154 (Miss. 2008). The latter part of this inquiry reflects the MTCA's incorporation of a common law "discovery rule," under which a statute of limitations is tolled until an injury and the cause of the injury are discoverable with reasonable diligence. *Id*. (citing *Barnes v. Singing River Hosp. Sys.*, 733 So.2d 199, 206 (Miss. 1999)); *Benvenutti v. McAdams*, 162 So.3d 808, 814 (Miss. 2015) (referring to "[t]he question of whether a statute of limitations is *tolled* by the discovery rule") (emphasis added)).

"Mississippi courts have consistently held that a plaintiff seeking to avail himself of the tolling provided by the discovery rule must show that he exercised reasonable diligence in

---

[11] November 26, 2012, is the date one year after the August 23, 2013, date of filing, inclusive of the 95-day notice tolling period.

determining whether an injury suffered is actionable." *Sundbeck v. Sundbeck*, No. 1:10-cv-23-A-D, 2011 WL 5006430, at *5 (N.D. Miss. Oct. 20, 2011) (internal quotation marks and alterations omitted). Consistent with this rule, the Mississippi Court of Appeals has placed the burden of invoking the MTCA's discovery rule on plaintiffs. *See Stark v. Greenwood Leflore Hosp.*, 39 So.3d 901, 904 (Miss. Ct. App. 2009) (dismissing MTCA case based on statute of limitations where plaintiffs "show[ed] no evidence that they exercised any due diligence").

Defendants argue that any claim for negligence is barred by the one-year statute of limitations because "an alleged negligence claim … accrued, at the very latest, at the time the *Adkins* complaint was filed on November 3, 2008." Doc. #31 at 8. Plaintiffs respond that the accrual dates of their negligence claims must be determined by reference to the continuing tort doctrine. Doc. #42 at 7.

*a. Continuing tort doctrine*

Under Mississippi law,

Where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.

A 'continuing tort' is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.

*Estate of Fedrick ex rel. Sykes v. Quorum Health Res., Inc.*, 45 So.3d 641, 643 (Miss. 2010) (internal punctuation and alterations omitted). The continuing tort doctrine applies to claims brought under the MTCA. *Id.*

Plaintiffs argue that the continuing tort doctrine is applicable here because their negligence action "alleges continued unlawful acts and omissions by Tupelo, in the form of very

specific violations of state and federal rules and regulations that have been committed and are currently being committed by the [sic] Tupelo in the operation of the Public Outfall Sewer." Doc. #42 at 7.

Although Mississippi courts have not addressed the role of the continuing tort doctrine in this precise situation, the Mississippi Supreme Court has held that negligent acts of omission may be deemed continuing torts. *Quorum*, 45 So.3d at 643. In *Quorum*, the Mississippi Supreme Court applied the continuing tort doctrine to a negligence action arising from a nursing home's negligent failure to place a patient on a restorative feeding program. *Id*. In so holding, the *Quorum* court noted that the patient "needed feeding assistance throughout this entire period; therefore, a tortious omission may have occurred every day that the defendants failed to provide her this kind of assistance. These allegations fit within the definition of a continuing tort, that is one inflicted over a period of time [involving] wrongful conduct that is repeated until desisted." *Id*. (internal alterations and quotation marks omitted).

In contrast, based on two cases cited by Defendants, Mississippi courts have held that causes of action caused by negligent *construction* do not qualify as continuing torts, even where the damages caused by such construction continue beyond the date of completion. *See Weckesser v. Chicago Bridge and Iron*, No. 1:08-cv-357, 2010 WL 323999, at *3 (S.D. Miss. Jan. 21, 2010) ("[T]he continued flooding of the property does not make this a continuing tort that would toll the statute of limitations. As a result, the Court finds that the plaintiffs' claims against the City that concern the initial construction of the water tower are barred by the one year statute of limitations and must be dismissed."); *Humphries v. Pearlwood Apartments P'ship*, 70 So.3d 1133, 1135–36 (Miss. Ct. App. 2011) ("We find that the construction of the apartment complex was one event, not a repeated action."). Other courts, addressing situations closer to the

one at bar, have invoked the continuing tort doctrine to charges of negligent maintenance of a sewer system. For example, in *Holland v. City of Geddes*, the Supreme Court of South Dakota found a continuing tort in water damage caused by a city's failure to repair a broken valve. 610 N.W.2d 816, 818–19 (S.D. 2000) ("Here we have both continuing breach of duty and continuing damage. The water dripped steadily, gradually eroding the soil and damaging the Hollands' house. At the same time, the City's breach of duty in failing to repair the broken valve was ongoing."). Similarly, in *Small v. Avoyelles Parish Police Jury*, the Third Circuit Court of Appeal of Louisiana applied the continuing tort doctrine to a claim arising from alleged "negligent operation and maintenance" of a sewer system. 589 So.2d 1132, 1133–35 (La. Ct. App. 1991).

Here, Plaintiffs seek recovery for the negligent "planning, developing, constructing, and/or maintaining the outfall sewer." Doc. #67 at ¶ 42. Based on the above authorities, the Court concludes the continuing tort doctrine is inapplicable to the extent Plaintiffs' negligence claims are predicated on Defendants' alleged negligence in the planning, development, and construction of the sewer system. *Humphries*, 70 So.3d at 1135–36; *see also Weckesser*, 2010 WL 323999, at *3 ("[C]laims that concern the City's alleged negligence in attempting repairs or alterations … are not barred by the statute of limitations."). However, to the extent Plaintiffs' MTCA claims rely on a course of allegedly negligent omissions in maintaining the sewer system—namely, the alleged failure to bring the City's sewer system up to relevant state and federal standards—the Court concludes that the continuing tort doctrine applies. *Quorum*, 45 So.3d at 643 (negligent omissions qualify as continuing torts). With this framework established, the Court turns to the issue of the date of accrual of Plaintiffs' specific claims.

### b. *Accrual of claims*

As an initial matter, though the precise dates of the planning, design, and construction of the City's sewer system are not apparent from the record, it is clear such acts occurred no later than April 2008, when the flooding at Evergreen Square began. *See* Doc. #30-1 at ¶ 5. Thus, the elements of the claims based on negligent planning, design, and construction existed no later than April 2008. *See Weckesser*, 2010 WL 323999, at *3 (negligent construction claim accrued during construction). Plaintiffs have offered no evidence or argument that they exercised reasonable diligence in discovering the cause of the damages, or that such cause was not discoverable with reasonable diligence. Accordingly, the negligence claims based on the construction and design of the sewer accrued no later than April 2008. *See Stark*, 39 So.3d at 904. Therefore, insofar as Plaintiffs' complaint was filed in August 2013, the negligent planning, design and construction claims fall well outside the MTCA's one-year statute of limitations.

Turning to the claims of negligent maintenance, Plaintiffs seek to recover damages resulting from backups caused by surcharges in the City's sewer system. *See* Doc. #67 at ¶¶ 26–28. Plaintiffs have introduced evidence that, as a result of the continued use of insufficiently shallow sloped pipes, the backups and surcharges have continued throughout this litigation. *See* Doc. #41-2 at ¶¶ 9–15. These allegations and evidence are sufficient to invoke the continuing tort doctrine with regard to the claims based on the negligent maintenance of the sewer system.

### 2. **Equitable estoppel**

Having found that the claims based on negligent planning, design, and construction fall outside the applicable statute of limitations, the Court must consider whether equitable estoppel

bars the application of the limitations period to such claims. In this regard, Mississippi law[12] has long recognized "that the doctrine of equitable estoppel may, in a proper case, be invoked to prevent [a] defendant from relying upon the statute of limitations." *Izard v. Mikell*, 163 So. 498, 499 (Miss. 1935). Equitable estoppel applies to the MTCA's statute of limitations. *Trosclair v. Miss. Dep't of Transp.*, 757 So.2d 178, 181 (Miss. 2000).

To invoke equitable estoppel in response to a statute of limitations affirmative defense, "the plaintiff must show … that (1) it was induced by the conduct of the defendant not to file its complaint sooner, (2) resulting in its claim being barred by the applicable limitations, and (3) the defendant knew or had reason to know that such consequences would follow." *Townes v. Rusty Ellis Builder, Inc.*, 98 So.3d 1046, 1055 (Miss. 2012) (internal footnote and alterations omitted). Furthermore, "[a]n equitable estoppel cannot indefinitely extend the limitations period. Thus, once the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir. 1995) (internal alterations and quotation marks omitted); *see Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 598 (7th Cir. 2001) ("[O]nce the circumstance giving rise to the estoppel is removed—once, for example, despite the defendant's efforts at concealment, the plaintiff learns that he has a claim—the filing of the suit cannot be delayed indefinitely.").[13]

---

[12] Relevant state law applies where equitable estoppel is asserted to prevent a state statute of limitations defense. *See Kaufman ex rel. Kaufman v. Robinson Prop. Grp. Ltd. P'ship*, 331 Fed. App'x 276, 277 (5th Cir. 2008).

[13] The Mississippi Supreme Court has looked to federal law as an analytical aid for interpreting the MTCA's limitations provision. *See Ray v. Keith*, 859 So.2d 995, 997–98 (Miss. 2003) ("Although federal courts apply strict compliance to the FTCA and Mississippi applies substantial compliance to the MTCA, the federal cases are quite significant."). Additionally, although it has never explicitly adopted this rule, the Mississippi Supreme Court has identified as a material fact in an equitable estoppel analysis "whether [plaintiffs] acted diligently in filing their complaint upon realizing [the truth of a misrepresentation]." *Townes*, 98 So.3d at 1056. Under these circumstances, the Court concludes that the Mississippi Supreme Court would adopt the federal rule requiring reasonable diligence following discovery of the truth of a misrepresentation.

Plaintiffs argue that Defendants should be equitably estopped from asserting the statute of limitations because certain representatives of the City suggested to Plaintiffs that Evergreen Square perform specific repairs to alleviate the sewage problems. Doc. #42 at 13–14, 20. Defendants reply that "there is no argument or proof that Tupelo officials intended to 'induce' or had reason to know that Evergreen would be induced not to pursue a cause of action against Tupelo for the claims asserted by the Evergreen apartment tenants." Doc. #52 at 4. Defendants also submit that because "Evergreen's private sewer line connected directly to the sewer line which Evergreen alleges was negligently designed … Evergreen cannot seriously contend that it was somehow 'misled' as to the true depth of Tupelo's sewer line …." *Id.* at 5.

"Concerning the first element [of equitable estoppel], the [Mississippi] supreme court has suggested that 'inducement may consist either of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary.'" *Peavey Elecs. Corp. v. Baan U.S.A., Inc.*, 10 So.3d 945, 954 (Miss. Ct. App. 2009) (quoting *Miss. Dep't of Pub. Safety v. Stringer*, 748 So.2d 662, 666 (Miss. 1999)). While courts throughout the country have concluded that mere denials of liability do not justify application of the equitable estoppel doctrine,[14] the Mississippi Supreme Court has applied equitable estoppel where a denial of liability included a specific factual misstatement. *See Trosclair*, 757 So.2d at 181 (applying equitable estoppel where city wrongly identified third party as negligent actor). However,

---

[14] *See, e.g., Edie v. Baca*, No. CV 03-6917, 2009 WL 3417844, at *8 n.15 (C.D. Cal. Oct. 19, 2009) ("A mere denial of liability, rather than a misrepresentation bearing on the necessity of bringing a timely suit, is insufficient to establish an estoppel to assert the statute of limitations."); *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002) ("[I]f we permitted denials of liability to be recast as active steps preventing plaintiffs from suing in time, a statute of limitations would not begin to run until a defendant acknowledged liability, an entirely strange concept.") (internal quotation marks and alterations omitted); *In re Mirena IUD Prods. Liab. Litig.*, No. 13-cv-3383, 2015 WL 144214, at *11 (S.D.N.Y. Jan. 9, 2015) ("Rather, the letter is a straightforward denial of responsibility for Ms. Wojtowicz's injuries and claims that she was adequately warned. Even if false, these statements are not the types of misrepresentation that could support an equitable estoppel argument.").

"[i]nequitable or fraudulent conduct must be established to apply the doctrine of equitable estoppel to a statute of limitations." *Trosclair*, 757 So.2d at 181. Under this standard, a "mistaken belief" cannot justify invocation of equitable estoppel. *City of Tupelo v. McMillin*, __ So.3d __, No. 2014-CA-01378, 2016 WL 1459101, at *7 (Miss. Apr. 14, 2016) (Coleman, J., plurality opinion).

Here, the record shows that Defendants' representatives attributed the flooding to Plaintiffs' pipes and garbage disposals, and represented that fixing these issues would alleviate the flooding. Even if these representations could be deemed inaccurate and classified as "conduct that suggests a lawsuit is not necessary," there is simply no evidence they were caused by anything other than a mistaken belief about the cause of the flooding issues. To the contrary, it appears Defendants dispatched City employees to ascertain the cause of the flooding. Accordingly, Defendants are not equitably estopped from invoking the statute of limitations. *McMillin*, 2016 WL 1459101, at *7.

### 3. Conclusion

Because the doctrine of equitable estoppel does not save Plaintiffs' claims from being subject to the MTCA's one-year statute of limitations, the MTCA's one-year statute of limitations bars all of Plaintiffs' claims except those based on the maintenance of the sewer system.

### C. Discretionary Immunity

In addition to its procedural requirements, the MTCA explicitly exempts from its waiver of sovereign immunity actions based on certain acts or omissions. Miss. Code Ann. § 11-46-9. Of relevance here, the statute provides that "[a] governmental entity … shall not be liable for any claim ... [b]ased upon the exercise or performance or the failure to exercise or perform a

discretionary function or duty on the part of a governmental entity …." *Id.* § 11-46-9(1)(d). Both Defendants here are indisputably governmental entities.

## 1. Recent changes in discretionary immunity jurisprudence

In *Brantley v. City of Horn Lake*, the Mississippi Supreme Court announced a new discretionary immunity test for evaluating claims where "the overarching function" being performed is rendered discretionary by statute. 152 So.3d at 1116. In such a case, "all acts in furtherance of that function are presumptively discretionary." *Id.* However:

> a plaintiff may defeat sovereign immunity, even when a governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.

*Id.* at 1115. Under this standard, "when the governmental function involved is discretionary, the plaintiff bears the burden of proving that the narrower function or duty at issue has lost its discretionary-function immunity." *Id.*

Since *Brantley*, the Mississippi Supreme Court has thrice considered the role of discretionary immunity in the context of claims based on the operation and/or maintenance of public sewers.

### a. Boroujerdi v. City of Starkville

In *Boroujerdi v. City of Starkville*, the Mississippi Supreme Court considered the application of discretionary immunity to the grant of summary judgment against the negligence claim of a plaintiff who sought to recover property damage caused when "the toilets, sinks, and tubs of [his] home ... overflowed from sewage backup after a heavy downpour of rain." 158 So.3d at 1108. Applying *Brantley*, the *Boroujerdi* court first observed that "[s]ewage maintenance is rendered discretionary by statute." *Id.* at 1112 (citing Miss. Code Ann. § 21-27-

189).  After concluding such, the court noted that "[o]ur task now, pursuant to our holding in *Brantley*, is to consider whether there are narrower functions or duties concomitant to the general discretionary function of sewage maintenance that have been rendered ministerial through statute, ordinance, or regulation." *Id*.  In answering this question, the court wrote:

> Sewage systems must comply with the Federal Water Pollution Control Act (the "Act"), a statute which makes it unlawful to discharge raw sewage into the environment. The Act requires publicly owned sewage-treatment works to establish effluent limitations and to abide by those limitations. 33 U.S.C.A. § 1311 (2009). ... The federal government sets the standards; and, although the states have some discretion with respect to how they will meet those standards, they have no choice but to comply. Accordingly, the function of maintaining a sewage system to maintain compliance with the Act is a ministerial function that is set within the larger discretionary function of general sewage creation and maintenance.
>
> Additionally, the Mississippi Department of Environmental Quality (MDEQ) regulates the permits required to operate wastewater-treatment facilities and wastewater polluters. *See generally* Miss. Admin. Code 11–6:1.1.1. Permits must be obtained before wastewater treatment is begun by anyone. Miss. Admin. Code 11–6:1.1.1(B)(1) ("Any person proposing a discharge of wastes to waters of the State ... shall file an application in the case of [a] ... permit."). To maintain a permit, and thus, the right to have a sewage system, "[t]he permittee shall at all times properly operate, *maintain*, and when necessary, promptly replace all facilities and systems of collection, treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." Miss. Admin. Code 11–6:1.1.4(A)(18) (emphasis added). So, an operator of a sewage system must maintain that system in order to keep the permit which allows it to operate that system.

*Boroujerdi*, 158 So.3d at 1112–13 (internal footnotes omitted and emphasis added).

Notwithstanding the above authorities, the court noted that "[u]nder our holding in *Brantley*, Boroujerdi's claim must fail unless he can prove that the City's negligence in failing to repair the sewage system involved a function or duty made ministerial by a statute, regulation, or other binding directive.'" *Id*. at 1114.  To this end, the court concluded that "Boroujerdi failed to identify any ordinance or regulation or permit requirement which would have rendered the City's

inaction subject to a ministerial function." *Id*. Accordingly, the court affirmed the grant of summary judgment against Boroujerdi. *Id*.

### b. *City of Magee v. Jones*

In *City of Magee v. Jones*, the Mississippi Supreme Court reviewed a claim that the City of Magee "negligently installed and maintained ... sewage lines" resulting in sewage flooding into the plaintiff's home. 161 So.3d 1047, 1048 (Miss. 2015). The lower court granted summary judgment in favor of the city and the plaintiff appealed. *Id*. The Mississippi Supreme Court reversed the grant of summary judgment, holding:

> the overarching functions of sewage-system construction, operation, and maintenance in this case are not imposed by any law. On the contrary, Section 21–27–189 gives municipal authorities complete discretion in exercising these functions. *See* Miss. Code Ann. § 21–27–189(b) (Rev.2007). Thus, the overarching governmental functions in this case are discretionary under Section 11–46–9(1)(d). However, there are numerous statutes and regulations that render various narrow duties related to sewage-system maintenance ministerial. Jones points out that Section 21–27–189 requires municipalities to maintain their sewage systems "in the manner and to the extent required by the metropolitan area plan" and to "adopt all necessary and reasonable rules and regulations to carry out and effectuate any waste treatment plan adopted for the metropolitan area." Miss. Code Ann. § 21–27–189(b),(i). In addition, the Mississippi Department of Environmental Quality strictly regulates the issuance of permits required to operate wastewater-treatment facilities. *See, e.g.,* Miss. Admin. Code. 11–6:1.1.4(A)(18). These statutory and regulatory mandates ... create narrow ministerial duties within the broad discretionary function of sewage-system maintenance.

*Id*. at 1051 (internal citations omitted).

The court did not reach the issue of whether the cited authorities applied to the plaintiff's claims, but directed that "[o]n remand, Jones must present evidence that her claim arises out of Magee's performance or failure to perform an act which furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority." *Id*. at 1051 (internal quotation marks and citation omitted).

### c. *Crum v. City of Corinth*

This year, in *Crum v. City of Corinth*, the Mississippi Supreme Court revisited the application of discretionary immunity to sewer maintenance. 183 So.3d 847 (Miss. 2016). In *Crum*, the plaintiff (Crum) sued the City of Corinth for damage caused by the flooding of sewage in her home. *Id.* at 849. On the defendant's motion, the lower court dismissed the plaintiff's action for failure to state a claim on the ground that maintenance of a sewer system fell within the MTCA's discretionary immunity exemption. *Id.* at 850. On appeal by the plaintiff, the Mississippi Supreme Court reversed, holding:

> Mississippi Administrative Code Section 11–6–1.1.4(A)(18) imposes a ministerial duty on permitted sewage system operators to properly "operate, maintain, and when necessary, promptly replace all facilities and systems of collection, treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of [the] permit." *See Boroujerdi v. City of Starkville*, 158 So.3d 1106, 1113 (Miss.2015). Taking as true Crum's allegation that "[t]he backflow of sewage into [her] home was due to the fault of [the City in] not properly maintaining the sewer system and/or its manholes and/or the City of Corinth causing the sewer system and/or manholes to flood by action of the City of Corinth and/or its employees," it cannot be said to a certainty that Crum would not prevail under any set of facts that could be proved in support of her claim.

> Under this Court's standard for Rule 12(b)(6) dismissal, assuming that everything alleged in Crum's complaint was true, the City bore the burden to show that Crum would be entitled to no relief under any set of facts. *Little*, 129 So.3d at 135 (quoting *Little*, 835 So.2d at 11). It did not. Therefore, Crum has stated an adequate claim, and the trial court erred in granting the City's motion to dismiss.

*Id.* at 851.

### d. *Summary*

Together, *Crum*, *City of Magee*, and *Boroujerdi* demonstrate that the discretionary immunity doctrine does not act as an absolute bar to claims for the negligent construction, design, planning, or maintenance of a sewer system. But, to overcome discretionary immunity at the summary judgment stage, a plaintiff seeking to recover for such negligence must do more

than merely rely on the existence of an administrative and regulatory framework. Rather, such a plaintiff must identify an "ordinance or regulation or permit requirement which would have rendered the City's inaction subject to a ministerial function." *Boroujerdi*, 158 So.3d at 1114.

## 2. Discretionary immunity from Plaintiffs' claims

In this case, Plaintiffs argue:

> the gravamen of [their] complaint ... is ... Tupelo was negligent in failing to comply with state and federal rules and regulations with respect to the depth of Tupelo's Public Outfall Sewer and the resultant aerial crossing and the impermissible infiltration of water into Tupelo's Public Outfall Sewer that causes the Public Outfall Sewer to flow under surcharged conditions.

Doc. #42 at 12. In their supplemental brief, Plaintiffs contend that recent Mississippi authority "conclusively established that a municipality's federal and state duties with respect to the construction, operation and maintenance of a public sewer system are, in fact, ministerial." Doc. #76 at 12. In support of this position, Plaintiffs identify the following as sources of ministerial authority: (1) the duty under 33 U.S.C. § 1311, the Clean Water Act, to establish effluent limitations and to abide by those limitations, *id.* at 9; (2) the requirement under Miss. Admin. Code 11-6:1.1.1(B)(1) that "[a]ny person proposing a discharge of wastes to waters of the State ... shall file an application in the case of [a] ... permit," *id.* at 10; and (3) Miss. Admin. Code 11-6:1.1.4(A)(18)'s requirement that a permit holder "properly operate [and] maintain ... all facilities and systems of collection ... which are installed or used by the permittee to achieve compliance with the conditions of [its] permit," *id.* Additionally, in its response to Defendants' motion, Plaintiffs cite Miss. Code Ann. § 49-17-29(2)(b), a provision which governs discharges into state waters; and various terms of the NPDES Permit which generally require compliance with the permit's conditions. Doc. #42 at 23–25.

Defendants respond that "the nature and scope of the terms of the permit and related MDEQ regulations relied upon by Evergreen ... do not impose 'ministerial duties' which are relevant to the claims of sewage backup as alleged by Evergreen's tenants." Doc. #74 at 6. Specifically, Defendants argue:

> when the terms of the permit and MDEQ regulations speak in terms of "discharge limits" and "effluent limitations" and general admonitions to undertake reasonable measures to maintain compliance with discharge limitations, the permit and the regulations refer to discharges into navigable waters and State waters and not discharges in general. Evergreen's Complaint, as amended, and its Response to Tupelo's motion, do not allege or even insinuate "discharges" in violation of the plain terms of the Permit and incorporated regulations which strictly concern and prohibit "discharges" in excess of the "effluent limitations" delineated in the permit at issue.

*Id.* at 6–7 (emphases omitted).[15]

Defendants seem to advance the position that Plaintiffs must show an actual violation of a ministerial duty in order to remove this action from the ambit of discretionary immunity. The Court finds no such requirement in the case law. Indeed, in *Brantley*, the Mississippi Supreme Court observed:

> [I]n granting immunity, the statute draws no distinction between discretionary acts and mandatory acts, as long as the acts are undertaken in the performance of 'a discretionary function or duty ....' *So it is the nature of the function that must be determined, and not the nature of the act*.

152 So.3d at 1115–16 (emphasis added and internal citation omitted). Under this test, Plaintiffs merely must "prove that the act [or inaction] which caused [their] property to flood with sewage 'furthered a more narrow function or duty … made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority.'" *Boroujerdi*, 158 So.3d at

---

[15] Defendants also seem to argue that a statute or regulation which does not provide for a private right of action cannot be used to defeat discretionary immunity. Doc. #74 at 8. Nothing in the relevant case law suggests such a requirement.

1113. Thus, the inquiry is limited to the *existence*, not a violation, of a ministerial function or duty, and whether that function or duty was furthered by the act at issue.[16]

In this case, there is no dispute that the provisions relied upon by Plaintiffs impose ministerial duties. *See Boroujerdi*, 158 So.3d at 1112–13. Accordingly, the question becomes whether the acts and omissions complained of may be deemed acts or omissions in furtherance of the identified duties. *See id.*

"The Clean Water Act anticipates a partnership between the States and the Federal Government, animated by a shared objective: 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992) (quoting 33 U.S.C. § 1251(a)). "Under the Act, an entity seeking to discharge pollutants into the waters of the United States must obtain a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §§ 1311(a), 1342(a). NPDES permits generally impose numeric effluent limitations on the discharge of pollutants. 33 U.S.C. §§ 1311(b), 1342(a)." *City of Abilene v. U.S. E.P.A.*, 325 F.3d 657, 659 (5th Cir. 2003). The weight of authority holds that "there must be an actual discharge into navigable waters to trigger the CWA's requirements ...."[17] *National Pork Producers Council v. U.S. E.P.A.*, 635 F.3d 738, 751 (5th Cir. 2011).

---

[16] The Court notes that a violation requirement would improperly conflate the immunity inquiry with the liability inquiry.

[17] The NPDES Permit regulates "discharges" and "daily discharges." *See* Doc. #41-8. "Daily discharge" is defined as "discharge of a pollutant." However, neither "discharge of a pollutant" nor "discharge" is defined in the NPDES Permit. *Id.* at 5. Where a term is undefined, the NPDES Permit directs the permittee to "refer to WPC-1, Chapter 1, Section I.A for definitions ...." *Id.* The administrative code, in turn, provides that "[t]he applicable definitions set forth in 40 CFR 122, 123, 124, 125, 144, 146, 403 and 503 and all amendments and additions thereto are incorporated herein and adopted by reference and shall be considered valid in this regulation, unless a term is otherwise defined herein." Miss. Admin. Code 11-6:1.1.1(A). The phrase "discharge of a pollutant" is not defined in the code or the permit, but, of relevance here, is defined in 40 C.F.R. § 122.2 as "[a]ny addition of any 'pollution' or combination of pollutants to 'waters of the United States' from any 'point source" or "to the waters of the 'contiguous zone' of the ocean from any point source other than a vessel or other floating craft which is being used as a means of transportation." The same provision provides that "[d]ischarge when used without qualification means the 'discharge of a pollutant.'" *Id.* Accordingly, it appears the NPDES Permit regulates only discharges into waters of the United States.

Furthermore, state law prohibits the discharge of "any wastes into any waters of the state which reduce the quality of those waters below the water quality standards established by the commission." Miss. Code Ann. § 49-17-29(2)(a). Waters of the state are defined as:

> all waters within the jurisdiction of this state, including all streams, lakes, ponds, impounding reservoirs, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems, and all other bodies or accumulations of water, surface and underground, natural or artificial, situated wholly or partly within or bordering upon the state, and such coastal waters as are within the jurisdiction of the state, except lakes, ponds or other surface waters which are wholly landlocked and privately owned, and which are not regulated under the Federal Clean Water Act (33 U.S.C. 1251 et seq.).

Miss. Code. Ann. § 49-17-5(1)(f)

Thus, the statutes and regulations identified by Plaintiffs establish ministerial duties to ensure that discharges from Defendants' sewer system into navigable and state waters do not exceed certain limitations set forth in Defendants' NPDES permit and other state standards. These duties necessarily include the duty to operate and maintain the sewer system to achieve compliance with the applicable limitations. However, Plaintiffs have offered absolutely no argument as to *how* these duties, which relate to managing discharges into navigable and state waters, were furthered by the alleged negligent acts related to the outfall sewer, which apparently resulted in flooding inside private structures. In the absence of such an argument, Plaintiffs cannot overcome the presumption of discretionary immunity at issue here.

## V
## Conclusion

For the reasons above, the Court concludes: (1) Plaintiffs' claims based on the design, planning, and construction of the sewer system are barred by the statute of limitations, and by discretionary immunity; and (2) Plaintiffs' claims based on the maintenance of the sewer system are barred by discretionary immunity. Furthermore, this Court's previous grant of summary

judgment against Plaintiffs' breach of contract claim, the only other claim asserted in Plaintiffs' complaint, was not disturbed on appeal. Accordingly, Defendants' motion for summary judgment [30] is **GRANTED**.

      **SO ORDERED**, this 3rd day of June, 2016.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
